Your Honor, the second case of the morning call, people who stayed at Oklahoma v. Barney v. Easley, 209-0145. On behalf of the Admiral, Ms. Colleen Morgan. On behalf of the Attorney, Ms. Anastasia Brooks. May it please the Court. Your Honor, counsel, my name is Colleen Morgan. I'm from the Office of State Pellet Defender in Springfield, and I represent Mr. Mark Easley. Mark Easley was convicted of attempted murder based on suggested police identification procedures, photographic evidence admitted without proper foundation and not challenged by ineffective counsel, and prosecutorial misconduct which urged an inadequately instructed jury to believe that it must find Easley guilty because he failed to prove his innocence. In this case, the identification testimony was the cornerstone of the state's case, but it was unreliable and unduly suggestive. However, trial counsel failed to file a motion to suppress that evidence. In this case, the testimony of Melissa Maloney and Jennifer Johnson was influenced by improper police identification procedures because police utilized a photographic procedure that tainted the women's in-court identification testimony. Counsel, let me just point to clarify, as I read the record in the briefs, the individuals you alluded to, the two women, they didn't make an in-court identification of the defendant, did they? They didn't point to him, no, but they identified the shooter and described the shooter as to what he looked like, and actually they described the person that they saw in the Facebook photos as being the shooter. But they didn't make an in-court identification, as that phrase is used, correct? That's correct. They didn't say, this man that I see sitting there is the shooter. All right, typically the state will ask the individual who you saw shoot X, is that person in court today, yes, would you identify him? They didn't do that. They did not, no. And did not their initial identification to police to whatever extent assist the defense because the description, the evidence then did not conform with the defendant's description? Well, to say that it was useful to the defense to be able to say that it was inconsistent is putting the cart after the horse. Basically, you're saying that it was useful to the defendant to be able to say this evidence that never should have come in in the first place. Well, the attorney might have decided as a matter of strategy that it would be useful. At a point in time. Well, that's my point, that there could not have been a valid strategy to say that it was useful when it was more prejudicial to begin with. And it was used only to kind of rehabilitate this idea of them coming in later. I'm sorry. Well, the woman initially gave a description shortly after the offense, but it was later that a photo identification was presented. And there was an inconsistency to some extent between the photo ID and the verbal ID. Absolutely. And the reason why there is that inconsistency is because they were given these photos that had Mark Easley very prominently featured in them. And they based their in-court testimony just on that photo. Their description was not a description of the shooter. Their description was a description of who was in the Facebook photos. I understand that. Would a reasonable attorney take the position that I'm going to make a strategy argument? The first description described a tall, thin man. And there was a difference with respect to hair, color, and hat. And argue that point with respect to attacking their later description, which was very general. There was never a definite description of the defendant. But there was a Facebook photo. And there was another photo. And it seems obvious that the later description, after they were shown the photos, they indicated that there was some resemblance to the photos and the defendant. Does that alternate type of evidence give a reasonable attorney a decision to either use it for cross-examination purposes and take the position that no juror would believe the testimony regarding the Facebook photo and the other photo? Well, certainly that's the state's argument. But I disagree. I don't believe it's reasonable at all to have this information put before the jury in the first place. Because whether you can rehabilitate someone or not, the jury hears it to begin with. And the jury's hearing this man who looks just like the defendant and who the defendant has agreed is in this photo was the shooter. And that's far more prejudicial than anything that would have come from if, say, that evidence had been excluded, then all we would have had were their general descriptions. It was this tall, lanky guy with a buzz cut. Now, a reasonable counsel could have come in and said, well, this is a tall man, but he's not lanky. He had at the time, as we could see in the photos, braids or was wearing a hat. He didn't have a buzz cut. So he could have discredited their testimony without having these photos come in. And particularly since they were backing up exactly what these women were saying was what the shooter looked like but was actually just what they saw in the photos. Well, fitting up on that point, you have the prejudice sprung, obviously, in effective assistance argument. We have the departure from the requirements. And then we have whether or not there was – the defendant doesn't establish prejudice and it doesn't matter whether his representation fell below an objective standard or reasonableness. But what he's saying is – and I'm thinking this out as you're making the argument – if counsel filed a motion to suppress identification which was successful and the jury never heard anything from the two women, you would be left with the positive identification of a single witness, which under the case law would be sufficient to sustain a conviction, would it not? I'd say in this case, no, because Anwar – I mean, it is the case law that that is true. Yeah, I would say, though, in this case that Mr. Pitt's identification evidence was not sufficient to be able to secure the conviction. Well, the jury thought it was. Yes, but I disagree, obviously. I mean, we're also saying that there was a reasonable doubt here. But certainly, it's not just a matter of looking at Mr. Pitt's testimony and saying, well, he did identify him, which – his testimony is doubtful. But there's a lot of things going on in this case that also have to contribute to what was going on here besides just this testimony. We also have the prosecutor at one point saying Mr. Easley didn't prove his innocence by not bringing forth this alibi. Well, let's not conflate that with the argument of ineffective assistance. But I think you have to to some degree. I mean, we're saying what's prejudicial? And we can look at all these little errors as they occur, and we have to, to understand what's going on. But we also have to look at the big picture and seeing as a whole, was the trial fair? Well, before I get into that, you started out with the argument about the ineffective, so let's confine ourselves to that for a moment if we could. What I'm saying is if you didn't detect identifications of the two other women, you would have one – it would be a one single-finger identification case. And the jury could find that that was sufficient if they believed it was a credible identification. In hindsight, it's always an advantage, as we say, looking back. Couldn't the defense believe that this is a case – we're going to make the argument that, look, the police were out to get the defendant in this case. Okay? So in tying in with that, we have these identifications that are very suggestive, and they keep going back to the other two witnesses and trying to say that they were coerced or they were unnecessarily influenced by the police procedures to identify somewhat the defendant. That gives them an argument before the jury that he doesn't have with regard to the victim. Right? I see what you're saying. The defense strategy will look like they were out – and here's why they were out to get him, because they kept going back over these witnesses. You take that out, you've got a single identification, and then you don't have all of these suggestive identification processes with regard to the victim. Didn't he pick out the defendant several days later? He testified he did, but this is another problem that we have with this case is there was no testimony regarding how that lineup was done, whether he picked out the person from an actual lineup or whether he picked them out from the Facebook photos. So I think I would want to know if I was making some argument about the police, you know, ganging up. I mean, I could see that that could be a strategy. I understand what you're saying, absolutely, but I don't think it's a reasonable one when you consider that putting this evidence before the jury in the first place is going to be so harmful. The tradeoff for saying that, you know, he's being persecuted by the police to be able to – you know, it isn't reasonable, especially what we know about how juries look at evidence, especially identification evidence and how important that is to them. Well, but what are you suggesting is the standard in whether or not an attorney is required to file a motion to challenge anything, whether it's a statement by the defendant, an identification, suppressed physical evidence? What is the standard for whether or not it falls within what's considered to be an acceptable level of a trial strategy? Why did that depart in this case? Well, would it have a reasonable chance of succeeding? Is it possible that it could have? And like you say, it is hindsight, but in this case we're also looking at all of the evidence that was presented, and we have to kind of see it in the context of everything that was going on. And, you know, there's also this issue of, you know, how much investigation did counsel do in the first place? We have Mr. Easley's allegations after trial that there was no effort to find this stub person. And so when we look at it in the whole, we have to wonder, you know, was this just a reasonable strategy or was it just not putting forth the effort? And looking at how a jury would look at this evidence and how harmful it could be, I don't see how it could be reasonable to, especially since juries are not going to be inclined to believe that the police are after the defendant. That's just not a really winning strategy. People generally believe the police are trying to do their job, you know, and they mean to do well. So to say that they're going to believe this sort of conspiracy argument with the Facebook photos. Well, it's hard to argue conspiracy if you don't have any evidence of a conspiracy. As I said, if you have a straight identification of the victim, single witness case, a photographic identification several days later, really nothing unusual. Well, they do, but then he had plenty of, or she had plenty of ways to attack the credibility of Mr. Pitts. He didn't come forward right away with any information after the police originally talked to him. He was protecting himself. He was not a disinterested witness. These girls were disinterested. The prosecutor hammered home an argument that, you know, they have no reason to lie. They just happened along. They have no interest in this case. But Mr. Pitts was involved in the fights. He purposefully did not cooperate with the police. He admitted that he lied to them. He said he wanted to keep his name out of it for whatever reason. Does the compelling nature of the evidence, the propriety and strength of the evidence, have a bearing on this issue? Because I think you'd have to agree, these identifications by the two women were not strong, as we say, identifications. There were issues and there were flaws because you said they didn't identify him in open court. There was questions over, you know, the influence of the pictures. How strong do you assess this in court testimony by the two women about the identification? I think it's very strong because the case was really close. I mean, the defendant had a very consistent story that he told to police when he was originally questioned that he told at trial. It was reasonable. It was not unreasonable. And we had, you know, this other witness who, the victim, who was not as credible as he could have been. That's why it was so important that, you know, and the state even knew it was important and made it clear to the jury that it was important that these bystanders happen by, you know, and happen to see this. And their ideas of identification, not really identification, but their implication that it was Mark Beasley that was the shooter, I think, with everything that was going on in this case, was enough to push it over to make the jury believe. Wasn't there some other corroborating evidence against the defendant? There was evidence of an ammunition box found in his possession. It was a gun case. A gun case, yes. But it was a gun case that was empty that was in his house. There was no packaging for any sort of ammunition. His mother was actually the registered owner of the gun. She testified that it, you know, it had disappeared, and she gave the gun case to Mr. Easley. And Mr. Easley's brother was arrested in Chicago with another gun of his mother's. So it's not unreasonable to believe that maybe he took the other gun or something. I mean, there... What about his clothing at the scene that was left at the scene? Well, his clothing, the state made a kind of imply that he was trying to leave his hat and coat behind, but then the defendant said, you know, I thought I was being shot at. I thought I was being chased by this man who was shooting me. It's not unreasonable. He was hiding. It's not unreasonable to believe that he might have been shooken up and, you know, set it down somewhere. So... But can't the state also argue that the contrary is evidence of guilt? He ditched his clothing at the scene? Well, that's certainly what the state said, that he tried to leave his clothing at the scene. But, you know, the state, he gave permission for the state to search his apartment, and they did find the hat. So if he really wanted to get rid of them, you would think he would not have taken them back to his apartment. Or if he was, you know, had the presence of mind right after a shooting to ditch the evidence that he would have taken home, he might have gotten rid of the gun case, too, if that were the case. I mean, it's kind of implying he's got this level of sophistication to be able to hide the evidence, and yet at the same time that he didn't. What's this about burden shifting in this case with this witness? Are you talking about the prosecutor's comments? Yeah. The prosecutor in rebuttal argument particularly was telling the jury that the defendant did not find stuff to come up with the story to help his case and basically prove his innocence. And he questioned, with the very first question that he asked Mr. Easley in cross-exam, he just constantly hammered and hammered him about finding this stuff and bringing him to be able to support his story and basically be his alibi. Bob, my position is this. If we question somebody for 10 or 15 minutes you have, you certainly deserve more time. And there have been long questions, so we'll give you another five minutes. The bell has rung. Well, with regard to the prosecutor's comments and his idea about having to find stuff, I mean, the state's position is that there's no reason he shouldn't have known this guy's last name and his phone number and his address. And I submit that that isn't entirely reasonable. I mean, for example, I take a ceramics class. I'm there with ladies. Some of them I know their first names. Some of them I don't know their last names. I don't know any of their addresses or their phone numbers. And if I was put in jail and asked to get in contact with them, I would have a hard time doing that. And it's not unreasonable that the defendant in this case could not do that. And for the prosecution to come back and say that is the reason why he didn't prove his innocence and that that's unreasonable, that's wrong. That's unfair. What was the state's specific argument regarding if the witness had appeared, how would that benefit the state? Well, that's part of the problem, and this is even worse. They were saying that Stubb would have corroborated the state's version. And they were basically saying the reason he didn't bring him forth is because Stubb was a witness for the prosecution, and it was bolstering their case by putting testimony in the mouth of this witness who wasn't there and which they couldn't even manage to produce. So that was even that much more egregious of an error. And the other small point, did the mother have a gun box or a gun case, if there is a distinction? She had a gun case, as I understand. And I'm not terribly familiar with it, but it had the padding in it, and it was a type of box that could lock, which was why Mr. Easley wanted it because he wanted the locking function on it. So that's the way I understand it. Anything else? No. Well, we'd ask for either a new trial or a reversal. Thank you. Okay. May I please support and counsel? My name is Anastasia Brooks, and I represent the people in this case. I just wanted to very briefly emphasize some points with respect to the reasonable doubt issue because the strength of the evidence has a lot of implication for some of the errors that the defendant alleges on the plain error analysis that would be required under the first prong, the closeness of the evidence with respect to Rule 431B, as well as the arguments with respect to the defendant's failure to call this person with the nickname Stubb as a witness, as well as the effective assistance of counsel arguments with respect to the second prong, the prejudice prong. So for that reason, the state would like to describe some of the compelling evidence that was presented, albeit circumstantially, in support of Pitts' identification of the defendant as a shooter. One of the important corroborating aspects of Maloney and Johnson's testimony was that the shooter was wearing gray. In contrast, the defendant had testified that he had seen out of the corner of his eye a person in black that was committing a shooting, so it was important to get Maloney and Johnson's version of what color of clothing the defendant was wearing, which is also circumstantial in the fact that the defendant was trying to get rid of the- Didn't the other female witness indicate the party had black clothing? I don't recall that. The two witnesses that they actually had seen anything about the shooting were Maloney and Johnson. I think the police kind of talked about-talked with different other people who had been at the scene but didn't necessarily see what happened. I do not recall any mention by the witnesses of a black sweatshirt or outer clothing that was being worn by- And if I'm wrong on that, I'm sorry, but just what I had in my brief was, from the testimony that I wrote down, was that the shooters had wore gray. And with respect to the gun case, the defendant's version was that he had stored $500 in it and was one reason why a gun had been stolen out of his mother's house. It never reported stolen. The implication is that one of his brothers has the other gun arrested in Chicago, and that's how police know what happened in the other stolen gun. He claims this gun had been stolen, but there was never a report made. And the other implication was, why did she buy the gun? She wasn't really into guns. The gun was too high for her to even reach on the shelf, which also meant that why in the world would that be necessary for self-protection if she didn't even know how to use it and couldn't reach it? So a lot of this seems very much like an after-the-fact way for them to explain away a very compelling piece of circumstantial evidence when he's also in Ohio in a shooting range. And what gun does he rent and what ammunition does he purchase? A .40 caliber Smith & Wesson, the same model that was used to shoot pits. So therefore, the implication, the reasonable inference to be made is that the defendant is practicing with the same model of gun that either he knows his mother has and that he could have access to. And the fact that the gun case is then discovered empty in his apartment and there's nothing stored in it, that's why he claims that he took it from his mother, that he had obtained it from his mother with her permission, was that he wanted to store valuables in it, but there's nothing inside. And he also tells police about his gray sweatshirt, but then police can't even find that in his home. So he was successful in disposing of that. And I believe part of the testimony valued that distinctive gray sweatshirt at about $200. So it's an expensive item. It's not one that somebody would just casually leave behind unless, of course, they were desperate to either avoid being identified at the scene when the defendant wanted to sit in a police car instead of with all these people around who might be able to identify him. That makes sense as well. But the most important part is what the defendant says in his testimony. And part of what the defendant is trying to make up here after the fact to explain away why he was there and why he had the motive and was actually trying to hit Pitts, at the moment he somehow sees out of the corner of his eye this gun person. Of course, he's on the wrong side of the dumpster fence, and he's running away in the same direction as the shooter supposedly went. And he says he's trying to get away from the shooter, and that's why he's hiding in this alley where the theater is. There's some cop car. If I could just interject. Sure. I think we know that when the defendant challenges the sufficiency of the evidence, the issue is whether any rational try or effect could have found the essential elements beyond a reasonable doubt. It's not our function to retry the defendant, and the record has to be construed by the most favorable to the state. I think, quite frankly, one of the more difficult issues in this case is the identification of the fact that trial counsel did not file a motion seeking to suppress the identification. To put it specifically, tell us why you believe that there's a sound defense strategy which would have induced the defense counsel to forego the motion to challenge the identifications. I think that's really the troubling aspect of the case. I understand. And what I was saying earlier was going to with respect to prejudice and things like that. But with respect to this issue, I wanted to clarify first, before I get into the substance of the response, which is any assumption that somehow if the motion to suppress hadn't filed and were successful, that somehow these witnesses would just entirely disappear from the case. But what they had told police about a shooter wearing gray, for example, or being tall, things that corroborate and would be important evidence against defendant, why would those have been excluded on the basis of something that happened thereafter when they're already on the record telling police before they have ever been suggested by a Facebook photo, for example. So if those would come in, then the attorney at that point in time before trial, before he even knows, or he or she, I'm sorry, knows whether there would be this sort of evolving testimony, any suggestion. He may have understood that, yes, they had been shown these photos. He or she may have known that from a police report. But how could he necessarily know exactly how their testimony would evolve? And if you have to look under the first prong of Strickland, you can't use hindsight to figure that out. So if he or she was looking at this at the beginning before trial, before he knows what they're actually going to say on the stand, and he says, well, I can either limit them, if they file the motion to suppress, to the most damaging parts of their testimony. And then that's all the jury hears, is that these people saw the tall shooter wearing gray. Or if he can then somehow, even if they do evolve their testimony, now he's got evidence of police suggestion. He's got the possibility that they were somehow doing something improper in order to get a conviction. That then gives the defendants all these powerful arguments. I think you just break it down for a second. You're saying that the witnesses, the 2-101 record was some evidence that would have come in independent of any identification. Clothing description, is that what you're suggesting? Well, independent of anything. If they're having a suggestedness or due process problem, what they had already said before any suggestedness arise should still come in. I would think that's true. But that's what you're saying. There was a clothing description that would have been cooperative of Pitts' identification that didn't hinge on any photographic identification. Is that what you're saying? Yes. Okay. And understanding here that these witnesses were not actual identification witnesses, somebody who were going to take the stand and point to the defendant. So what is there to keep out other than the possibility that there could be things that the defense could use to undermine the state's entire prosecution, essentially? To put it another way, you're saying even if the defense counsel had been successful and would have suppressed the out-of-court as well as the in-court identification, these witnesses still could have been called with regard to a clothing description that they gave before the allegedly suggestive identifications? Correct. Okay. If counsel knew that ahead of time and had to consider what was possibly going to be kept out and what use could be made of that evidence, even if counsel could anticipate, yes, this might evolve, but it's suggestive, and therefore. The point is, it might be a risky strategy, but it's a strategy nonetheless. And it's definitely a strategy that at least some competent counsel could have taken. Because if counsel is deemed ineffective here, but some other reasonable attorney could have done the exact same thing, and we're going to have a retrial, and that counsel and the reasonable thing that's going to happen could have done the exact same thing, then essentially you can't find this counsel ineffective for doing something that some other reasonable attorney could have done. And Strickland, it's a very wide range of reasonable assistants. There's all kinds of strong presumptions. What color did the defendant's hair get? The defendant's hair, I don't recall exactly. Isn't the record, didn't the record indicate brown? I don't remember, Your Honor. I'm sorry. What was the testimony of the women of the color hair of the person they saw? I don't remember exactly either that, Your Honor. Answer, I'm sorry, Your Honor. It testified, in my memory, it was the black hair, the one described with this buzz. And when I mentioned black, wasn't there testimony that he was wearing a black hat? I'm not sure whose testimony. I know the pictures they talked about show this hat from the rap concert that happened before the shooting, or he's putting the hat on, I believe, is one reason why counsel wanted these pictures and evidence, because he was putting the hat on as he's leaving the club, which is after the fistfight, inside the club, but immediately prior to the shooting. So that corroborates the defendant's claim that he was, in fact, wearing a hat outside. It's circumstantial, but at least that would corroborate it. Didn't they have a video of the defendant exiting the building and he had a hat on? I think it was video. They might have taken still captures out of the video, but yes. And it was some type of large, big hat that presumably a witness would notice? If he saw the defendant? That was the defense's argument, that that was something that Maloney and Johnson should have recognized if, in fact, they had seen a shooter. But whether they were paying attention to his hair or his hat is not necessarily going to destroy whatever they did testify to, which is what they were able to see. A weapon, for example, the defense talks about weapon focus, for example. They may not have been focusing on what his head looked like or what his hair was or his hat. Would you agree that if the two witnesses, Maloney and Johnson, I believe, made their identification from the photos, and up until the time they saw the photos, they really couldn't, their identification of the defendant was so general and incongruous with respect to some of the other facts that it would have very little, if any weight, and on motion the judge might have excluded it, so that the evidence that went to the jury, or whatever weight the jury gave it, if any, came from looking at the photos, not the prior statements that the woman made relative to identification. I'm trying to get a grasp of the question again. Is what could have been gained from excluding the evidence, if that was part of the trial strategy, or are we talking about prejudice? I'm talking about both prejudice and the attorney excluding. I'm filing a motion to exclude their testimony entirely on the basis that any testimony that went to the jury, which was magnified when the photos went to the jury, was based on what they saw. In other words, the women could not identify the defendant based on their description, initial description, but when the police came up with the photographs, then they identified, primarily instigated or propelled by the photographs, made a connection between the photographs and the defendant. Well, they weren't necessarily able to do that. I believe when they were looking at the photographs, all they could say is he resembled the person they thought was the shooter. If you're a jury and you hear testimony that the photograph resembles the person I saw shooting the gun, how are you going to, what weight are you going to give that? You're going to give it some weight. In corroboration, essentially, of what Pitts says. Well, even if there was some corroborative weight that the defense could have successfully kept out, all the strategic considerations aside, there was still a lot of other circumstantial evidence in favor of the judgment that when the defendant himself puts him right next to Pitts and says he was trying to hit him, it's like he had the motive, he was waiting outside for him. The only question is, did he have the gun or was he just going to wait outside to continue the fist fight? It doesn't seem really, he could have kept fighting inside and didn't have to leave unless maybe he was going to go get a gun. So this ties into your lack of prejudice part, is that what you're saying? He puts himself at the scene, the women are going to testify to a certain amount of evidence anyway. So you're saying there's a lack of prejudice under the Strickland Promise? Right, exactly, as well as the reasonable trial strategy. And even if this were a purely strategic judgment, what Strickland says is it's almost impossible for a considered strategic judgment to be overruled under Strickland. Well, that's the issue, as Eleanor Cohen has alluded to. Is it really a sound strategic strategy not to file the motion? And you're saying obviously it's not. Well, I believe it's in the Sorrow case when he talks about errors of omission are very difficult to prove on direct appeal because we don't even know why the counsel acted as he or she did. So if that's the case, if it was in fact on say post-conviction, counsel says yes, this was my trial strategy and this was my fully considered judgment and I knew all the relevant facts and all the relevant law and I still decided this way, that judgment is virtually unassailable under Strickland. There's another problem here. As I understand, this case has to go back for a crankle hearing anyway, doesn't it? Yes. You conceded error that the court should have. When the ineffective assistance of counsel claims are railed in a post-trial motion, the court should have conducted a crankle inquiry, correct? With respect to the claims the defendant raises in this post-trial motion, I'm not sure if this particular allegation is one of those claims it's going to go back to. But it's going back for a crankle hearing. Yes, exactly. So some of this can be developed either on remand, on a crankle hearing, for example, or post-conviction. But it's very hard. It's really an insurmountable burden on this record to show, like, would you mind if I leave to conclude then? You may finish your thought. Oh, okay. Well, my point is just on direct appeal. The burden is very high and here it's essentially impossible. And the defendant's story was neither consistent nor reasonable. And for these reasons, state suggests that this court should affirm the conviction and sentence. Thank you. Thank you. Just rather quickly with regards to if the counsel had made this motion to suppress the women's ID test or their description testimony, their import, anything that was tainted by the Facebook photos, what the state would have been left with was their original descriptions. And that was just that the shooter was tall and lanky, was a black male. He had short black hair or a buzz cut. And he either had either a lightweight gray coat or a gray sweatshirt. So that's something that would have been very easy for the defense to challenge, particularly in terms of whether he was lanky. He obviously did not have buzz cut hair. The defendant in the photos that were shown of the club had him with long shoulder length braids. He would have been able to challenge that. And the fact that it was a gray type of clothing, it was one piece of clothing, they couldn't really say very much at all. Their descriptions were very vague. So it wouldn't have been overwhelming evidence, even if the rest of the identification type testimony would have been kept out. Counsel, the trial court did not conduct a proper inquiry into the defendant's pro se claims of ineffective assistance under Cranker, correct? Correct. And you've asked him to go back for that? Yes. Was one of those issues raised in the ineffective assistance argument by the defendant that counsel should have filed a motion to suppress identification? Not specifically, no. But he did say that counsel did not do a lot of investigation on his behalf. And I would say that, I mean, you're talking about a pro se motion where someone is not terribly articulate with what they're saying. And I think when he was saying, I strongly feel my appointed counsel poorly investigated facts and possible leads surrounding my case, looking up and finding how was the line of identification given to Anmar Pitts would have been another thing that would have gone underneath it. I guess what I'm saying is if we remand this back for Cranker inquiry, is there any procedural impediment to allowing the trial court then to also get into the issue of the failure to file a motion to suppress identification? Can that be within the scope of this Cranker hearing? It sounds like something you're advocating. It's more like a combination of a PC hearing, which in the first place you wouldn't have to have the Cranker hearing if you remanded for the new trial. But I don't know that that would be inappropriate because certainly if new counsel were appointed to argue for the defendant, I mean, the trial court is going to go back and listen to this and decide should new counsel be appointed. And new counsel at that point could bring up that issue with regards to whatever they were advocating on behalf of the defendant. But you're saying the defendant himself did not specifically raise the issue of the failure to file a motion to suppress? Not that I recall. And if he did, I apologize. But I don't recall that he specifically said that. He raised a number of different issues. But off the top of my head, I apologize. But he did say he wanted a motion for new trial filed, which he had filed a pro se motion just like a couple days before counsel did actually file the motion for new trial. So I do not recall that he raised that at all. Did I misunderstand you a minute ago? Did you say if we do send it back for a new trial, what happens to the Cranker issue? Well, he should be able just to start again and have new counsel. So there would not be a Cranker? Well, I can't see the point, to be honest. I mean, I've never seen this before, and I can't support it with case law. But I suppose if you're saying my counsel didn't represent me here and you're getting a whole new counsel and a whole new chance to do it over again, I can't see why it would be necessary. No, I agree with you. I thought I heard you say, maybe I just misheard you. I thought you said if you send it back for a new trial, we have to have a Cranker. Oh, no, I apologize. We shouldn't have said that. I think I just misheard you. That's, I think, what the situation was. So maybe what we're getting at here is if we send this back for a Cranker hearing, these issues, a lot of the issues that are raised here will be addressed in the trial court. I mean, that's what we're trying to find out. How much will be addressed in the trial court and let it be addressed there in the first instance? I think it could be. I mean, certainly when it gets remanded for the Cranker hearing, at that point, I think only has to look at what the defendant's alleged here before the court decides whether new counsel should be appointed. I think it's that far back in the stage that new counsel is not automatically appointed, because we're saying here he didn't even listen to or contribute. So I think at that point, if new counsel was appointed, then they could expand on what the defendant's been alleging and allege with respect to the motions to suppress and that sort of thing as well. So your position is that if the trial court gets past the first phase and decides to appoint counsel, then counsel has the authority and the defendant's rights to broaden. I believe so, but I think that it can't be cured just automatically from the Cranker hearing because necessarily the trial court does not have to consider that particular issue as well. So if it goes back to a Cranker hearing and the judge says, I'm not going to appoint counsel, then you're going to wishly undecide these other issues then? Absolutely, because I think that leaves him without a remedy in that case. One possible way to get around that is find a file of PC and ask that the PC be combined with the Cranker hearing. But then would that preclude the defendant if he were to get new counsel from filing another PC? Would that be his second PC? Is that somehow going to harm him? I would be afraid of doing something in that case. If we make a 90-day ruling on the PC and if we have all the grounds in the PC, we're going to at least have some record of all the rulings in case the judge limits the Cranker hearing on each of the objections that we're making. I would be leery in advocating my client file a PC just for the whole DOC takes their credit away, which is a good idea. But we'd ask for a new trial or an outright reversal. Thank you. All right. Case is taken under advisement. Court stands in recess.